UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
FERNANDO PEREIRA,                  )
                                   )
       Plaintiff,                  )
v.                                 )    C.A. No. 17-059 WES-LDA
                                   )
ELECTRIC BOAT CORPORATION,         )
                                   )
       Defendant.                  )
_____)

## MEMORANDUM AND ORDER

William E. Smith, Chief Judge.

Before the Court is Defendant Electric Boat Corporation's Motion for Summary Judgment, ECF No. 16. After considering the evidence and arguments presented by the parties, for the reasons set forth herein, Defendant's Motion for Summary Judgment is GRANTED.

I. Factual Background[1]

Plaintiff Fernando Pereira applied for a job as an "Outside Electrician" with Electric Boat in May 2014. Def. Statement of Undisputed Material Facts ("Def.'s SUF") ¶ 11, ECF No. 18. Electric Boat, a government contractor, has a facility in Quonset Point, Rhode Island, where it manufactures submarine components

---

[1] The following facts are undisputed, unless otherwise noted. Where there are factual disputes, the Court views the facts in the light most favorable to Plaintiff. See Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 312 (1st Cir. 2016).

1

and outfits submarines. Id. at ¶¶ 4-5. Outside Electricians are responsible for installing lighting, components, cabinets, hangers, and cable, as well as hooking-up electrical components, fiber-optics and testing. Id. at ¶ 7. Both parties agree that Pereira accepted a conditional job offer from Electric Boat contingent upon his completion of Electric Boat's physical examination. Id. at ¶ 13.

All applicants for positions at Electric Boat are required to undergo this post-offer pre-employment physical exam to determine whether the applicant is medically able to perform the functions of the position. Id. at ¶ 17. Concentra Medical, an outside contractor, conducted Pereira's physical in July 2014. Id. at ¶¶ 18-19. Due to his medical history, Electric Boat requested additional medical information from Pereira. Id. at ¶ 19 (quoting Damien M. DiGiovanni Decl., Exhibit D, Andrews Dep. 14:5-14). Dr. Susan Andrews, the medical director at Electric Boat's Quonset Point facility, obtained further documentation of Pereira's medical conditions, including records going back two years. Def.'s SUF ¶ 14, ¶ 20, ¶ 25; Pl.'s Resp. to Def.'s Undisputed Facts ("Pl.'s RSUF") ¶ 21, ECF No. 25-2. Pereira's medical history included a knee injury from 2011, carpal tunnel syndrome, and degenerative joint disease in both knees and ankles. Def.'s SUF ¶¶ 27-33.

Based on these records, his physical exam by Concerta, and Dr. Andrews' discussions with Pereira, Dr. Andrews determined that Pereira would require restrictions, specifically that he could not stand for an entire shift and had significant limitations in certain movements such as bending, crouching, and gripping. Id. at ¶ 35.[2] Dr. Andrews relayed these restrictions to Brian Shields, the Manager of Electric Operations at the facility. Id. at ¶¶ 35-39. Shields, who had no role in determining the restrictions themselves, ultimately found that Pereira's restrictions could not be accommodated due to the nature of the Outside Electrician Job, which requires standing or walking for an entire day, using one's hands repetitively, and bending and squatting constantly. Id. at ¶ 39.[3]

After Shields made this determination, Electric Boat's Accommodation Review Committee ("ARC") was convened to conduct an individualized assessment, which included interviewing Pereira. Id. at ¶¶ 40-43. Electric Boat claims that Pereira stated during the interview that he needed an hour-long break after performing several hours of repetitive tasks; Pereira denies admitting he

---

[2] Plaintiff disputes this fact, but, like many of his "disputed facts," what he is disputing is the method Dr. Andrews used to come to her conclusion, not the conclusion itself. Pl.'s RSUF ¶35.

[3] Plaintiff disputes these facts on the grounds that he was performing the same job functions previously as an electrician in New York. Pl.'s RSUF ¶ 39.

could not do the job or that he needed specific restrictions. Id. at ¶ 44; Pl.'s RSUF ¶ 44. The parties also dispute whether Pereira admitted in that meeting that no accommodations would enable him to perform the job functions. Def.'s SUF ¶ 45; Pl.'s RSUF ¶ 45. The ARC found that Pereira could not be accommodated, and Pereira was told he could apply for other positions at Electric Boat that might be a better fit. Def.'s SUF ¶¶ 46-7.

In January 2015, Pereira applied again for an Outside Electrician job at Electric Boat. Id. at ¶¶ 48-49. As part of his second application process, Electric Boat was provided with updated medical information regarding Pereira's carpal tunnel syndrome. Id. at ¶ 49. Based on that, Dr. Andrews determined that she could lift some of the previous restrictions related to Pereira's carpal tunnel syndrome if he wore a wrist brace, and presented those updates to Shields. Id. at ¶¶ 52-53. However, without any changes to his other restrictions, his offer was again rescinded. Id. at ¶ 53. A second ARC interview and discussion took place in April and May 2015, at which time it was again determined that Pereira could not be accommodated. Id. at ¶ 54.

Pereira filed suit against Electric Boat, alleging two causes of action: (1) that Electric Boat intentionally discriminated against him on account of his disability[4] by refusing to hire him,

---

[4] It is unclear from Pereira's Complaint what disabilities he is alleging, but in his Objection to Defendant's Motion for Summary

4

in violation of the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1 et seq ("Count I"); and, (2) that Electric Boat intentionally discriminated against the Plaintiff on account of his age by refusing to hire him ("Count II"). Plaintiff's Complaint ("Pl. Compl."), Exhibit 1, ECF No. 1. Electric Boat filed this motion for Summary Judgment ("Def. Mot."), ECF No. 16, and Memorandum in Support of its Motion, ECF No. 17. Plaintiff filed an Objection to Defendant's Motion for Summary Judgment ("Pl. Obj."), in which he dropped Count II of his Complaint. ECF No. 25-1. Defendant filed a Reply in Further Support of its Motion for Summary Judgment ("Def. Reply"). ECF No. 29.

II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court "construe[s] the record in the light most favorable to the nonmovant and resolv[es] all reasonable inferences in that party's favor[,] . . . we can safely ignore conclusory allegations, improbable inferences, and unsupported speculation." Mulloy v.

---

Judgment he specifically limits his claim to his carpal tunnel syndrome. Pl. Obj. 12; see infra 8.

5

Acushnet Co., 460 F.3d 141, 145 (1st Cir. 2006), quoting Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002).

III. Plaintiff's Prime Facie Case

   A. Relevant Law

In employment discrimination cases based on disparate treatment, the Court usually applies the three-part burden-shifting paradigm set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973) ("McDonnell Douglas"). However, the instant case falls into a particular sub-genre of disparate treatment cases – ones in which the plaintiff alleges that an employer failed to hire him because of a protected disability.[5] In this context, to make out a prime facie case, the plaintiff must show that he "(1) suffers from a disability . . . as defined by the ADA[6] . . . that (2) he was nevertheless able to

---

[5] Courts use the ADA to help interpret the Rhode Island Civil Rights Act's provisions regarding disability discrimination. See Kriegel v. R.I. Dep't of Corr., 266 F. Supp.2d 288, 296 (D.R.I. 2003) (remarking that the "contours" of disability discrimination under RICRA are best understood by referring to the analysis used in the ADA, the "corresponding federal statute"); Tardie v. Rehabilitation Hosp. of R.I., 6 F. Supp. 2d 125, 132-33 (1st Cir. 1999).

[6] This is a two-part inquiry asking first whether the plaintiff has a "physical or mental impairment" and then whether that impairment "substantially limits one or more of the major life activities of such individual." Katz v. City Metal Co., Inc., 87 F.3d 26, 30-1 (1st Cir. 1996); citing ADA, 42 U.S.C. §12102(2).

6

perform the essential functions of the job, either with or without reasonable accommodation, and finally (3) that [the employer] took an adverse employment action against him because of . . . his protected disability."[7] Carroll, 294 F.3d at 237 (citing Lessard v. Osram Sylvania, Inc., 175 F.3d 193, 197 (1st Cir. 1999)). Where there is no direct evidence of the third element, "a plaintiff may indirectly prove that he was discriminated against because of a disability by using the *prima facie* case and burden shifting methods that originated in McDonnell Douglas . . . ." Katz v. City Metal Co., Inc., 87 F.3d 26, 30 n.2 (1st Cir. 1996).

B. First Element: Protected Disability

In order to show he has a disability under the ADA, Pereira must show that he has a physical or mental impairment which substantially limits a major life activity.[8] Carroll, 294 F.3d at

---

[7] Defendant applies the wrong framework, citing disparate treatment cases involving discrimination based on race or age, and particularly "failure to promote" cases. Rathbun v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004) (prime facie elements of "failure to promote" claim are that plaintiff is a member of a protected class, is qualified for an open position to which he applied, but was rejected in favor of someone possessing similar qualifications).

[8] There are two other ways in which a plaintiff can prove a disability under the ADA – by showing a record of such an impairment, or showing that the employer regarded him as having such an impairment. Carroll, 294 F.3d at 238 n.4; 42 U.S.C. § 12102 (2)(B)(C). Pereira argues for the first time, in response to Defendant's motion, that even if he is not "disabled" under the ADA, he has a "record of disability" or, alternatively, he was "regarded as" disabled by Electric Boat, and that he was discriminated against on one of those two covered grounds. Pl.

238 (citing 42 U.S.C. § 12102(2)(A)). While Pereira briefly mentions knee injuries and carpal tunnel in his Complaint, in his Objection to Defendant's motion he specifically limits his disability allegations to his carpal tunnel syndrome.[9] He maintains that his carpal tunnel causes him tingling in his wrist both when he is working and at rest.[10] Pl. Obj. 11; Def.'s SUF ¶ 28, DiGiovanni Decl. Exhibit A, Pereira Dep., 16:23-24, 17:1-7.

---

Obj. 12-14; Pl. Comp. 34. As part of these claims, Pereira alleges disabilities other than his carpal tunnel syndrome. Id. The Court declines to review these claims, as Pereira is procedurally barred from raising them now for the first time. See Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 84 (1st Cir. 2008) ("It simply will not do for a plaintiff to fail to plead with adequate specificity facts to support a regarded as claim, all the while hoping to play that card if her initial hand is a dud."); see generally Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1171 (1st Cir. 1995) (defendant has an "inalienable" right to know the cause of action being asserted against him). Substantively, Pereira's "regarded as" claim necessarily fails because he merely summarily states that "it is clear from the restrictions that Defendant withdrew Plaintiff's conditional offer of employment because of his various medical conditions that regarded him a[s] disabled." Pl. Obj. 14.

[9] This is the only disability Pereira alleges to support his claim of a "physical impairment that substantially limits a major life activity." Pl. Obj. 13 ("For this part, Plaintiff is only claiming that issues with his hands and wrist (carpal tunnel syndrome) constitute a disability." Pl. Obj. 11.) As noted above, in his newly minted "record of disability" and "regarded as" claims, he references his other medical conditions. See Pl. Obj. 12-13. But because these claims were not properly raised, the Court is not able to review them, and so limits its discussion to Pereira's carpal tunnel syndrome. See supra n.8

[10] It is not clear whether Electric Boat disputes that Pereira's carpal tunnel syndrome constitutes a disability. Electric Boat makes the conclusory statement that Pereira cannot "demonstrate

Pereira argues that because his carpal tunnel syndrome affects his ability to use his hands in a repetitive motion "such as an electrician, in construction work, typing and other jobs," he is therefore substantially limited in the major life activity of working. Pl. Obj. 12; R.I. Gen. Laws § 42-87-5. Pereira asks the Court to find that an impairment need "substantially limit only one major life activity to qualify as a disability" and cites to the ADA Amendments' ("ADAA") in support of his argument. Pl. Obj. 11-12; ADAA, Pub L. No. 110-325, § 2(b)(5), § 12102(4)(C)(stating expressly that courts have interpreted "substantially limits" too narrowly and that "an impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability."); see <u>Martin v. District of Columbia</u>, 78 F. Supp. 3d 279, 297-98 (D.D.C. 2015)(finding that an impairment need substantially limit only one major life activity to qualify as a disability under the ADA).

While it is a relatively close call, the Court need not decide whether there is a dispute of material fact over whether Pereira has a physical impairment that substantially limits a major life activity, because, assuming that he does, the second element -- whether Pereira was a qualified individual capable of performing

---

that he was an individual with a disability," but never actually explains this statement in more detail. Def. Mot. 7.

the essential functions of the job with or without accommodation -- provides a sufficient basis for decision.

A. Second Element: Qualified Individual

Analyzing this element involves two steps: (1) whether the employee could perform the essential functions of the job; and, (2) if not, whether any reasonable accommodation by the employer would enable him to perform those functions. Ward v. Massachusetts Health Research Inst., Inc. 209 F.3d 29, 33-34 (1st Cir. 2000). Courts should give "substantial weight to the employer's view of job requirements," although it is not dispositive. Mulloy v. Acushnet Co., 460 F.3d 141, 147 (1st Cir. 2006), quoting Ward, 209 F.3d at 34.

i. Essential Functions

There is no real dispute over the essential functions of the Outside Electrician job at Electric Boat. Rather, Pereira argues that Electric Boat's assessment that he could not perform those functions without accommodations was inaccurate, in part because the assessment was based on old records as opposed to an "individualized" inquiry into his health. Pl. Obj. 14-18.

Contrary to Pereira's description, however, Electric Boat did perform an extensive inquiry. Electric Boat's decision not to hire Pereira twice was based on a physical exam performed by an outside contractor, a physical exam performed by Dr. Andrews (the second time Pereira applied), records obtained regarding previous

medical diagnoses and treatment, interviews with Pereira, and discussions within a committee set up for exactly this purpose. Def. Mot. 12-13; Def. Rep. 6. In the cases Pereira cites, the employer conducted a much less thorough inquiry than Electric Boat did here. See e.g., Equal Emp't Opportunity Comm'n v. M.G.H. Family Health Ctr., 230 F. Supp. 3d 796, 808 (criticizing employer's "mechanical reliance" on plaintiff's medical records to place plaintiff on a medical hold despite the fact that plaintiff had worked in the position without accommodation for five weeks); Lafata v. Dearborn Heights Sch. Dist. No.7, No. 13-cv-10755, 2013 WL 6500068, at *11 (E.D. Mich. Dec. 11, 2013) (finding plaintiff entitled to summary judgment where employer had no discussions about whether there was a reasonable accommodation that would allow plaintiff to fulfill the duties of the job).

After all the steps outlined above, Electric Boat concluded that Pereira had carpal tunnel syndrome (the first time he applied), degenerative joint disorder in both knees, and degenerative joint disorder in both ankles. Def.'s SUF ¶ 14, ¶ 16, ¶ 34. Dr. Andrews imposed the following restrictions: "occasional repetitive hands, grip/grasp, occasional bend, stoop, squat, crouch, frequent stand, walk." Def.'s SUF ¶ 43. When Electric Boat evaluated Pereira during his second application for the Outside Electrician job, it looked at his updated records regarding his carpal tunnel and determined that this condition had

improved and could be accommodated by the wearing of a wrist brace. Id. at ¶ 52; DiGiovanni Decl., Ex. 1 at 11. For all intents and purposes, this ends the inquiry, as Electric Boat was willing to accommodate Pereira's carpal tunnel syndrome, and he acknowledges that. Pl. Obj. 12.

However, Pereira attempts to pivot and challenge Electric Boat's decision not to hire him because of his other physical conditions. But this sleight of hand fails. The only disability Pereira has claimed was carpal tunnel; Electric Boat accommodated this, but determined he could not perform the essential functions of the job for other reasons. And he couldn't. Brian Shields, the Manager of Electrical Operations, determined that despite the lifting of Pereira's hand movement restrictions, Pereira still could not perform the essential functions of the job because outside electricians "need to be able to stand or walk the entire day" and must be able to bend, squat and stoop frequently. Def.'s SUF ¶ 47, ¶ 53; DiGiovanni Decl., Ex. 1 at 11.

Pereira argues that Electric Boat was wrong and that he could in fact perform the essential functions of the job, despite the problems with his knees and ankles, since he had been performing similar work at his previous job in New York. Pl. Obj. 15-17. But the record shows that the work he performed previously was quite different than the job at Electric Boat required. For example, in his previous job he had been working in "non-confined" spaces much

12

of the time but would be in a confined space for "100% of his shift" at Electric Boat. Def.'s SUF ¶ 7-10; Pl. Obj. at Ex. 2 (Pl. Affidavit); DiGiovanni Decl., Ex. A at 47. In fact, as argued by Electric Boat, there "are few, if any similarities between the two jobs with regard to their physical requirements . . . the only major similarity was that both required he be a licensed electrician." Def. Reply 4.

Additionally, Pereira's cited cases are inapposite, as they involve plaintiffs who had been working for the defendant employer, already performing the same job functions, when they were fired. See Iselin v. Bama Cos., 690 Fed. Appx. 593, 596 (10th Cir. 2017) (the plaintiff had been working for defendant performing the same job duties before being fired); D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1234 n.6 (11th Cir. 2005) (same); Rizzo v. Children's World Learning Ctrs., Inc., 173 F.3d 254, 260 (5th Cir. 1999), see Def.'s Reply 5-6. Here, where Pereira had not been working for Electric Boat or performing the same job functions elsewhere, his previous employment was irrelevant to assessing his ability to do the job of an Outside Electrician.

This all makes clear that while Electric Boat was willing to accommodate Pereira, he was nonetheless unable to perform the essential functions of the job even with that accommodation.

ii. Reasonable Accommodation

A "reasonable accommodation is one which would enable [the plaintiff] to perform the essential functions of [his] job [and] . . . at least on the face of things . . . is feasible for the employer under the circumstances." Mulloy, 460 F.3d at 148 (citing Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 (1st Cir. 2001)) (internal citations omitted); see also 29 C.F.R. 1630.2(o)(1)(ii). In determining what is a reasonable accommodation, courts are deferential to employers. Mulloy, 460 F.3d at 147; Mason v. Avaya Comm., Inc., 357 F.3d 1114, 1123 (10th Cir. 2014) ("In cases arising under the ADA, we do not sit as a 'super personnel department' that second guesses employer's business judgment") (internal citations omitted); 29 C.F.R. § 1630 App'x ("It is important to note that the inquiry into essential functions is not intended to second guess an employer's business judgment . . .").

Pereira acknowledges that Electric Boat was willing to accommodate his carpal tunnel syndrome by letting him wear a wrist brace. Pl. Obj. 12. Pereira suggests that Electric Boat could have provided a different accommodation that not only would have addressed his carpal tunnel but also would have accommodated his knee and ankle problems. He says Electric Boat should have allowed him to act as a "safety advisor" most of the time. Pl. Obj. 19. Electric Boat did consider this suggestion and rejected it. Def.'s Reply 10. Electric Boat explains that each outside electrician

14

takes a turn being "safety advisor," it "could not reasonably accommodate [Pereira] by allowing him to perform only one small function of the job, full time," especially when the safety advisor position is the only chance each outside electrician has to stand up and rest their hands during the day. Def.'s Reply 10; Def.'s SUF ¶ 7-10. Electric Boat was not required to "reallocat[e] essential functions to make other workers' jobs more onerous," in order to accommodate Pereira. Mulloy, 460 F.3d at 153; see Phelps v. Optima Health, Inc., 251 F.3d 21, 26 (1st Cir. 2001) (employer did not have to allow nurse employee to engage in a job-sharing arrangement as a reasonable accommodation).

Electric Boat's accommodation of Pereira's only claimed disability – his carpal tunnel syndrome – was reasonable. It was not required to provide Pereira with the alternative accommodation he sought.

C.  Third Element: Adverse Employment Action

Pereira also fails to meet the final element of an ADA claim: that the employer's decision was based on the plaintiff's claimed disability. As outlined above, Electric Boat's decision not to hire Pereira was based not on his carpal tunnel syndrome, but on his inability to meet the requirements of the job because of his other medical conditions. See supra 10-11. Therefore, Pereira has failed to show, as is required under the law, that Electric Boat took the adverse action of not hiring him "because of, in whole or

in part, his protected disability." Carroll, 294 F.3d at 237; see Chalfant v. Titan Distribution, Inc., 475 F.3d 982, 990-91 (8th Cir. 2007) (finding evidence of a "specific link" between the disability discrimination and the employer's adverse action – its decision not to hire the plaintiff).

IV. Conclusion

For the reasons discussed above, Defendant's Motion for Summary Judgment, ECF No. 16, is GRANTED.

IT IS SO ORDERED.

/s/ W. Smith

William E. Smith
Chief Judge
Date: October 21, 2019